IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

_____

| | | |
|---|---|---|
| LEWIS PRICE, III, | ) | Cause No. CV 12-22-BLG-CSO |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING § 2254 PETITION |
| | ) | AND DENYING CERTIFICATE |
| WARDEN LEROY KIRKEGARD; | ) | OF APPEALABILITY |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF MONTANA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

On February 28, 2012, Petitioner Lewis Price, III, filed this action for a writ of habeas corpus under 28 U.S.C. § 2254. Price is a state prisoner proceeding pro se.

On June 4, 2012, Respondent ("the State") was ordered to file certain documents from the state court record. It complied on June 28, 2012, and Price submitted additional exhibits on August 1, 2012. On September 4, 2012, the State was ordered either to supplement the record as to one claim or to file an Answer on all claims. It answered on October 18, 2012. Price filed a Reply on October 30, 2012.

1

On December 19, 2012, based on the parties' written consents, this matter was assigned to the undersigned for all further proceedings, including entry of judgment. *See Doc. 29.*

## I. Background

Following a bench trial, Price was convicted of assault with a weapon, designated a persistent felony offender, and sentenced to serve forty years in prison. *State v. Price*, 171 P.3d 293, 295 ¶ 1, 296 ¶ 9 (Mont. 2007) (affirming conviction for violation of Mont. Code Ann. §§ 45-5-213(1)(b), 46-18-502(1) (2003)).[1]  The conviction was based on evidence indicating that, on April 12, 2005, Price held a stun gun to Tabitha Olson's temple and fired. *Id.* at 295-96.

On October 21, 2008, Price filed a petition for postconviction relief in the trial court. Judgment *(Doc. 16-1)* at 1 para. 2. On June 11, 2009, Price and the State stipulated to postconviction relief. *Combined Arraignment, Change of Plea, and Sentencing Tr. (Doc. 9-6) ("Combined Tr.")* at 3:23-4:11, 8:16-9:4. The original charge was amended, and Price agreed to plead guilty to one felony count of criminal endangerment, a violation of Mont. Code Ann. § 45-5-207(1) (2003). The State agreed to withdraw its previously-filed persistent felony offender notice and to recommend a sentence of ten years with all but time served suspended. Plea

---

[1] Unless otherwise noted, subsequent citations to the Montana Code refer to the 2003 edition.

2

Agreement *(Doc. 9-7)* at 4 ¶ 1. The agreement stated that the victim of the offense and the probation officer "may testify concerning this recommendation for sentencing." *Id.* at 7 ¶ (1)(a). It also stated that "at the sentencing hearing, the State and the Defendant may present and argue evidence in support of the plea agreement." *Id.* at 6 ¶ 2.

On the same date, June 11, 2009, Price appeared in open court for arraignment on the Amended Information. He changed his plea from "not guilty" to "guilty" and was sentenced, all in accordance with the plea agreement. *Combined Tr. at 28:23-24, 29:1-4.* The State offered written statements from the victim and from a witness who had testified at Price's trial in 2005. Stating that Price's "fourth violent felony needs to have the appropriate consequences," the trial court declared Price ineligible for parole and sentenced him to serve ten years in prison. *Id.* at 50:17-23, 51:4-10.

Price appealed, arguing that the State breached the plea agreement and urging the supreme court to apply plain error review, since his counsel did not object at sentencing. The Montana Supreme Court found the error – if error it was – was not plain and did not "plainly implicat[e]" Price's constitutional rights. Order at 4 ¶ 10, *State v. Price*, No. DA 09-0533 (Mont. May 26, 2010), *available at* http://supremecourtdocket.mt.gov (accessed Jan. 18, 2013).

Price applied for relief from the Sentence Review Division ("SRD") of the

3

Montana Supreme Court. He was unsuccessful. He applied to the Montana Supreme Court for an out-of-time appeal of the SRD's decision, but his application was denied on the grounds that no direct appeal lies from a decision of the SRD. Order at 2, *State v. Lewis*, No. DA 11-0067 (Mont. Feb. 23, 2011), *available at* http://supremecourtdocket.mt.gov (accessed Jan. 18, 2013).

In March 2011, Price filed a petition for postconviction relief in the trial court, along with a motion to substitute another judge for the Honorable Blair Jones, who presided in the underlying case. Apparently that motion was denied, and Price sought relief in the Montana Supreme Court. On May 25, 2011, the Montana Supreme Court denied the motion for substitution. *See* Order at 2 ¶ 9, *Price v. State*, No. DA 11-0532 (Mont. Feb. 14, 2012) (referring to prior proceeding), *available at* http://supremecourtdocket.mt.gov (accessed Jan. 18, 2013).

Meanwhile, the trial court denied postconviction relief. Price appealed. On February 14, 2012, the Montana Supreme Court held that counsel was not ineffective for failing to object to submission of the victim's written statement because "[t]he plea agreement does not expressly provide any such restrictions, and hearsay evidence may be considered at sentencing," and because Montana law requires an opportunity for the victim "to present a statement." Order at 3-4 ¶ 7, *Price v. State*, No. DA 11-0532 (Mont. Feb. 14, 2012) (referring to Mont. Code Ann. § 46-18-

4

115(4)). The court also held that the trial court did not rely on false information when it referred to him as "a violent offender with a violent record." *Id.* at 4 ¶ 8. Finally, the court reiterated its previous holding that Price's affidavit in support of Judge Jones's disqualification was "insufficient as a matter of law" to require Judge Jones's substitution. *Id.* at 4 ¶ 9.

Price filed his federal petition on February 20, 2012. Pet. *(Doc. 1)* at 6, Pet'r Decl. ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

## II. Claims

Price alleges, first, that his attorney, Joseph Howard, provided ineffective assistance in violation of the Sixth and Fourteenth Amendments in three ways: (1) by failing to object at sentencing that the State breached the plea agreement when it presented a "false unsworn and unverified" written statement rather than live testimony from the victim and "another irrelevant unverified letter" from a trial witness; (2) by allowing him to be sentenced based on a "false" presentence investigation report; and (3) by allowing him to be sentenced by a judge who "participated in pretrial settlement negotiations that failed." Pet. at 4-5 ¶¶ 15A-C. Price also contends that appellate counsel was ineffective because she failed to raise on appeal defense counsel's failure to object to the alleged breach of the plea

5

agreement and the denial of Price's right to confront his accusers. *Id.* at 4 ¶ 15B.

Second, Price contends that the sentencing judge should have recused himself or been disqualified due to his participation in failed settlement negotiations and repeated exposure to a materially false presentence report. *Id.* at 5(b) ¶ 15D. Price adds a contention that "Chief Justice McGrath prosecuted Price and should not rule on any of his appeals." *Id.*

### III. Analysis

Although Price's petition does not allege the claims underlying his allegations of ineffective assistance as independent grounds for relief, his memorandum in support of the petition does so. Consequently, his claims are reorganized here. Each claim is addressed as an independent ground for relief. Corresponding claims of ineffective assistance follow that analysis.

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Price must show, first, that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and, second, that there is a reasonable probability the outcome would have been different absent counsel's error, *id* at 694. The *Strickland* standards apply to claims of ineffective assistance of appellate counsel as well. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

6

Although the Montana Supreme Court decided some of Price's claims on the merits, it is not clear whether it considered federal law.  In *Johnson v. Williams, No. 11-465 (decided February 20, 2013)*, the United States Supreme Court held that, in such circumstances, there is a rebuttable presumption that the state court adjudicated the federal claim on the merits and that, therefore, the deferential standards of 28 U.S.C. § 2254(d) apply.  *Id. (slip op. at 7-10)*.  Whether viewed under these deferential standards or under a *de novo* standard, however, the Court finds that Price is not entitled to habeas relief for the reasons set forth below.

**A. Breach of the Plea Agreement**

In the Acknowledgment of Rights and Plea Agreement, Price acknowledged that "the sentence to be imposed is within the sole discretion of the Court and that the State has not made any promises or representations as to the actual sentence which the Court will impose." *Doc. 9-7 at 3 ¶ 13.*  It further provided that Price understood "that the Court may reject or modify the recommendations of counsel in any fashion that the Court deems appropriate." *Id.*

In the Plea Agreement, the parties agreed that "the Defendant shall be sentenced to serve 10 years at Montana State Prison with all but (time served . . . ) suspended" subject to a list of twenty-one conditions. *Id.* at 4 (parentheses in original).  The parties also agreed that "at the sentencing hearing, the State and the

7

Defendant may present and argue evidence in support of the plea agreement." *Id.* at 6 ¶ 2. Under the heading "Alternative Provisions" – which, despite its wording, appears to have been part and parcel of the agreement, *id.* at 7 – the parties stated they "further understood and agreed that:"

> (a) The prosecutor will abide by the terms of the pretrial agreement throughout all proceedings relevant to the determination of sentence including sentence review and parole proceedings; *Defendant understands that the victim of the offense may testify concerning this recommendation for sentencing, as well as the probation officer;* . . . .

*Id.* at 7 ¶ (1).

Price asserts that the provision in subparagraph (a) precluded the State from presenting any evidence other than live testimony from the probation officer and "the" victim, presumably Tabitha Olson. Instead of live testimony, the State submitted two sentencing letters, one from Olson and one from Michelle Guptill. Price claims the State's presentation breached the plea agreement.[2]

In *Santobello v. New York*, 404 U.S. 257 (1971), the United States Supreme Court held that "when a plea rests in any significant degree on a promise or

---

[2] Guptill was a neighbor and friend of Tabitha Olson. Guptill was in another room of the house when Price shot Olson with the stun gun. Guptill testified at trial that she personally was frightened by Price's behavior. Bench Trial Tr. *(Doc. 9-4)* at 98:16-130:5. Montana law does not define the word "victim." A reasonable person could conclude that Guptill was one, although Price's conduct was not directed at her. Price may not think her credible, but her testimony and letter cannot be described as "irrelevant."

8

agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262. Price suggests the provision in subparagraph (a) was designed to ensure that only the victim or the probation officer could have input into the sentencing hearing and, if the victim was to have any input, he would be entitled to cross-examine her. But a reasonable person would not describe such a purpose by saying "Defendant *understands* that the victim of the offense *may* testify concerning this recommendation for sentencing." Some form of words that describe the purpose Price claims was intended would be used instead – for example, "If the victim wishes to comment, she must be present to testify and the Defendant will have the opportunity to cross-examine her." Price's reading of subparagraph (a) is an after-the-fact attempt to find language in the plea agreement suggesting that it was error for the court to consider the victim's letter – not, as *Santobello* requires, "part of the inducement or consideration" for Price to enter into the agreement.

Price also asserts that his appellate counsel was ineffective, because she should have alleged that trial counsel provided ineffective assistance by failing to object to the State's (alleged) breach and by failing to object to Price's inability to confront the victim. But trial counsel's failure to object to a breach could have been unreasonable only if there was a breach. There was not. Nor did Price have a federal or state right

9

to confront the victim at sentencing. *Williams v. New York*, 337 U.S. 241, 246 (1949) ("a sentencing judge [may] exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law."), *cited in Sivak v. Hardison*, 658 F.3d 898, 927 (9th Cir. 2011); *Kills On Top v. State*, 15 P.3d 422, 438 ¶ 62 (Mont. 2000) ("an offender's right to confront witnesses and an offender's due process rights at sentencing are satisfied so long as the offender is informed of the information that will be presented and is provided an opportunity to rebut that information."). And, as stated, Price did not bargain for the right to confront the victim as a matter of contract.

It was not unreasonable for trial counsel to confine his objections to "some of the statements in that letter," Combined Tr. at 32:18-23, rather than to the trial court's consideration of the letter, Mont. Code Ann. § 46-18-115(4). It was not unreasonable for appellate counsel to fail to allege ineffective assistance when there was no unreasonable error by trial counsel. *Juan H. v. Allen*, 408 F.3d 1262, 1273-74 (9th Cir. 2005). All claims relating to the alleged breach of the plea agreement are denied.

**B. "False" Presentence Investigation Report**

In the plea agreement, Price acknowledged that he "entered into this agreement freely and voluntarily and with full knowledge of its terms and conditions." Plea

10

Agreement at 3 ¶ 11. And "[t]he parties agree[d] that a presentence investigation report prepared by Tom Woods and filed in this case in 2006[] will be considered." *Id.* at 4 ¶ 1 lines 21-22. Price specifically agreed to use of the presentence report he now alleges is false. His claim that use of the 2006 report was "[c]ontrary to the specific terms of the plea agreement," Pet. at 4 ¶ 15A, is denied.

In addition, trial counsel made corrections to the report, Combined Tr. at 34:25-36:16, 40:24-41:8, and Price also personally discussed his criminal history with Judge Jones at sentencing, *id.* at 44:11-47:21. Price conceded the instant offense was at least his third violent felony. *Id.* at 45:17-18, 45:23-25, 46:1-13. Although Price contests the portion of the report that referred to threats to law enforcement, *see* Mem. at 2; Presentence Report at 3 ("Circumstances of the Offense"), Judge Jones's explanation for the sentence does not suggest he was specifically concerned about threats made against law enforcement. He was concerned about Price's predilection for guns and violence generally; that predilection is a fact Price did not and could not deny. Combined Tr. at 48:2-50:14; *see also* Mont. Code Ann. § 46-18-101(3)(e); *Brecht v. Abrahamson*, 507 U.S. 609, 638 (1993) (requiring habeas petitioner to show alleged error had "substantial and injurious effect" on the decision at issue); *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

Because Price does not allege facts supporting an inference that his sentence

11

was based on materially incorrect information, this claim is denied.

Further, not only was there no reasonable basis for an objection, *Strickland*, 466 U.S. at 687-88, but there is no reason to believe that Judge Jones would have imposed a different sentence if counsel had clarified the number of Price's violent felonies and his conduct toward law enforcement, *id.* at 694. Price shows neither deficient performance by counsel nor resultant prejudice. His derivative claim of ineffective assistance is also denied.

### C. Trial Judge's Recusal

Although Price contends that Judge Jones participated in plea negotiations, it is clear he did not. The parties worked out an agreement between themselves that would, if accepted, be binding on the trial court. They presented it to Judge Jones. He rejected it. Mem. at 14 (referring to Mont. Code Ann. § 46-12-211(1)(b)). There was nothing unconstitutional about that procedure.

A useful contrast is provided by *United States v. Bruce*, 976 F.2d 552 (9th Cir. 1992), where the judge asked the prosecution to describe for the defendants the terms of its plea offer, emphasized the severe maximum sentence available if the parties did not reach a plea agreement, and recessed overnight to let the defendants think about it, with parting advice strongly recommending that they do so very carefully. *Id.* at 555. Judge Jones did only what a judge is authorized to do by Mont. Code Ann. § 46-

12-211(2)-(4). *See also State v. Afterbuffalo*, 40 P.3d 375, 377 ¶ 13 (Mont. 2002); *cf.* Fed. R. Crim. P. 11(c)(2), (5).

As for Judge Jones's reliance on a false presentence report, as set forth above, Price has not shown any uncorrected erroneous information in the report. He also agreed to rely on it.

Finally, the bench trial transcript, the original sentencing transcript, and the combined transcript contain no evidence whatsoever of judicial bias. Opinions "properly and necessarily acquired in the course of the proceedings" are "necessary to completion of the judge's task," *Liteky v. United States*, 510 U.S. 540, 551 (1994), and provide no support for recusal. Even when a judge familiar with the facts of the case strongly encourages a defendant to accept what the judge believes to be a favorable plea offer from the State, a petitioner may have another kind of claim, *see Bruce*, 976 F.2d at 555, but the judge does not exhibit bias, *Crater v. Galaza*, 491 F.3d 1119, 1130-32 (9th Cir. 2007). Price's claim that he was "sentenced by a biased court," Pet. at 4 ¶ 15A, is meritless. All claims concerning Judge Jones are denied.

### D. Chief Justice McGrath

Although it does not appear that Price raised this claim at any prior stage, he now asserts that "Chief Justice McGrath prosecuted Price" and so "should not rule on any of [Price's] appeals." Pet. *(Doc. 1)* at 5(b) ¶ 15D. Chief Justice McGrath held

13

the office of Attorney General of the State of Montana before he was elected to the Montana Supreme Court in November 2008. As Chief Justice, he participated in deciding the direct appeal on Price's current conviction, Order at 4, *Price*, No. DA 09-0533, and wrote the opinion affirming the trial court's denial of postconviction relief, Order at 2, *Price*, No. DA 11-0532.

The question is whether the Due Process Clause of the United States Constitution required Chief Justice McGrath to recuse himself. The test is whether, "under a realistic appraisal of psychological tendencies and human weakness," Chief Justice McGrath's participation in Price's case "pose[d] such a risk of actual bias or prejudgment" that it "must be forbidden if the guarantee of due process is to be adequately implemented." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883-84 (2009) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)) (internal quotation marks omitted). But where there is reason to believe a judge has extra-judicial knowledge of a particular case or already has an opinion on the merits, or where objective circumstances would lead the average judge "not to hold the balance nice, clear and true," *Tumey v. Ohio*, 273 U.S. 510, 532 (1923), recusal is necessary, even if a judge conscientiously concludes that he does not have any actual bias, *Caperton*, 556 U.S. at 886. Where there is "the probability of unfairness," *In re Murchison*, 349 U.S. 133, 136 (1955), recusal is required to preserve "the imperatives

of due process," *Caperton*, 556 U.S. at 886.

### 1. The Chief Justice's Former Position as Attorney General

Before he was elected as Chief Justice and took office in January 2009, Mike McGrath was the Attorney General of the State of Montana. As such, he was named as the lead attorney on every appellate brief filed by the State during his tenure.

But it has long been recognized that "there is no impropriety where the judge's role as prosecutor has been largely formal, as in the case of former Attorneys General, who have only theoretical responsibility" for routine prosecutions. John P. Frank, "Disqualification of Judges," 56 Yale L.J. 605, 624 (1947), *cited in*, *inter alia*, *Caperton*, 556 U.S. at 877. Montana law places the authority to initiate a criminal prosecution within the "broad discretion" of the county attorney. *State v. Tichenor*, 60 P.3d 454, 459 ¶ 26 (Mont. 2002); *see also State ex rel. Woodahl v. First Jud. Dist. Court*, 495 P.2d 182, 185 (Mont. 1972). Thus, as in many States, the Attorney General in Montana has "theoretical responsibility" for routine criminal cases.

Further, transitions between executive and judicial office are neither novel nor prohibited by the Federal Constitution. The case of *Schneiderman v. United States*, for instance, came before the United States Supreme Court at a time when two former Attorneys General were on the Court. Justice Jackson was Attorney General when the Court of Appeals for the Ninth Circuit issued the decision under review. He

15

recused himself. But Justice Murphy, who was Attorney General when Schneiderman was indicted and trial was held in the District Court, did not recuse himself and wrote the majority opinion. *See* 320 U.S. 118, 207 (1943) (Jackson, J., stating reason for recusal); *Laird v. Tatum*, 409 U.S. 824, 829-30 (1972) (Rehnquist, J., denying motion to disqualify himself and observing, based on *Schneiderman*, "different Justices who have come from the Department of Justice have treated the same or very similar situations differently.").

Chief Justice McGrath is not required to recuse himself in all cases initiated at a time when he was Attorney General.

**2. Involvement in Eddleman's Situation in Carbon County**

Price's current conviction and sentence for criminal endangerment follow from a stipulation to postconviction relief in 2008 "due to the circumstances of Mr. Price's trial attorney." Combined Tr. at 4:7-8, 9:21-22. Price was represented at trial by Robert Eddleman. As the Court previously noted, *see* Order *(Doc. 12)* at 2-4, after his representation of Price, Eddleman was indicted in this Court for federal drug crimes. It appeared possible that these unique circumstances might distinguish Price's case from the typical case in which Chief Justice McGrath's former role as Attorney General does not mandate recusal. Accordingly, the Court required additional information from the State, which responded by supplementing the record

16

on October 18, 2012. Price filed various documents in reply, but all have to do with his other claims.

Eddleman's situation came to the attention of Attorney General McGrath, who had "independent personal knowledge regarding the situation" and advised the Carbon County Commissioners about Eddleman's leave. Commissioners' Minutes *(Doc. 21-1)* Dec. 8, 2008, at 1 para. 5. In addition, assistance to the office of the Carbon County Attorney came from the Prosecution Services Bureau, a division of the Department of Justice headed by Attorney General McGrath. Harris Aff. *(Doc. 21-1)* at 3 ¶ 5; Truman Aff. *(Doc. 21-2)* at 2 ¶ 4; Commissioners' Minutes Dec. 11, 2008, at 1-2 paras. 5-6.

With the participation of Catherine Truman of the Prosecution Services Bureau as well as new defense counsel, Price and the State reached the agreement underlying his current conviction and sentence. When Price appealed the sentence he received as a result of that agreement, and when he petitioned anew for postconviction relief, Chief Justice McGrath participated in both of those appeals.

But Attorney General McGrath's "independent personal knowledge" of and involvement in *Eddleman's* situation, Harris Aff. *(Doc. 21-1)* at 3 ¶ 4, does not mean he had personal knowledge of or involvement in *Price's* situation. Barbara Harris, who was Chief of the Prosecution Services Bureau at the time in question, states that

17

she "did not discuss with McGrath any specific cases currently needing prosecution services in Carbon County as a result of the situation with Eddleman." *Id.* Harris Aff. at 3 ¶ 5. The Assistant Attorney General for the Prosecution Services Bureau in the Office of the Montana Attorney General at the pertinent times states that neither she nor, to her knowledge, Barbara Harris, "ever communicated with Mr. McGrath at any time about any aspect of the [Price] proceedings." Truman Aff. *(Doc. 21-2)* at 3 ¶¶ 5-6.

The record before the Court suggests no support for an inference that Attorney General McGrath personally obtained knowledge, before he became Chief Justice, about Price or Price's case. No facts suggest he became "so enmeshed in matters involving [Price] as to make it appropriate" for him to recuse himself. *Hurles v. Ryan*, __ F.3d __, No. 08-99032, slip op. at 32 (9th Cir. Jan. 18, 2013) (quoting *Johnson v. Mississippi*, 403 U.S. 212, 215-26 (1971)), or that he took any particular action as a "part of the accusatory process" in Price's case, *Murchison*, 349 U.S. at 137. Chief Justice McGrath's participation in Price's appeals is in no way distinguishable from his participation in any action challenging a conviction obtained while he was Attorney General.

### 3. Conclusion

No "probability of unfairness," *Murchison*, 349 U.S. at 136, arises either from

Attorney General McGrath's change of office or from Attorney General McGrath's role with respect to Eddleman's situation. Price's claim of judicial bias against Chief Justice McGrath is denied.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Price's claims regarding the State's breach of the plea agreement misread the plain language of the agreement. The State did not promise to call Olson to testify at sentencing. Appellate counsel had no legal basis to object to Olson's absence or to her sentencing letter, and trial counsel reasonably confined his objections to "some of the statements in that letter." Price has not identified any material false information in the presentence report, and the information on which the trial judge

19

relied was correct. Nothing in the record suggests the trial judge was biased. Finally, there is no "probability of unfairness" based either on Attorney General McGrath's becoming Chief Justice or on Attorney General McGrath's knowledge of the situation involving Price's former defense counsel.

Price has not made a showing with any substance to it that he was deprived of a constitutional right. There is no reason to encourage further proceedings. A COA is not warranted.

Based on the foregoing, the Court enters the following:

### ORDER

1. Price's petition *(Doc. 1)* is DENIED on the merits.

2. The Clerk of Court shall enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is DENIED.

DATED this 22nd day of February, 2013.

/s/ Carolyn S. Ostby
United States Magistrate Judge